**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| PRIMORIS T&D SERVICES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> FIRSTENERGY CORP., <br><br> Defendant. | Civil Action No. 24-05877 (JXN)(JSA) <br><br> **OPINION** |

**NEALS**, District Judge

Before the Court is a motion by Defendant FirstEnergy Corp. ("Defendant" or "FirstEnergy") to dismiss Plaintiff Primoris T&D Services, LLC's ("Plaintiff" or "Primoris") Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure[1] 12(b)(6) or, alternatively, to transfer this matter to the U.S. District Court for the Northern District of Ohio, Eastern Division pursuant to 28 U.S.C. § 1404(a). (ECF No. 17). Defendant filed a memorandum in support of the motions (ECF No. 18); Plaintiff opposed (ECF No. 19); and Defendant replied in further support (ECF No. 21). The Court has carefully reviewed the Complaint and the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion to transfer venue is **GRANTED,** and the motion to dismiss is **DENIED as moot**.

## I.    BACKGROUND

Primoris is a Delaware limited liability company based in Fort Worth, Texas, engaged in electric and telecommunications construction, including storm restoration projects. (Compl. ¶¶ 1,

---

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

4, ECF No. 1.) Defendant is an Ohio corporation based in Akron, Ohio, and is the parent company for a broad umbrella of corporations providing electric utility services throughout the Midwest and Mid-Atlantic United States. (*Id.* ¶¶ 1, 5; *see also* Def.'s Moving Br. at 8–9, ECF No. 18.)

In 2018, Primoris agreed to provide storm restoration services to Defendant's affiliates in several states, including New Jersey, to repair damage caused by Hurricane Isaias. (Compl. ¶ 6; Compl. Ex. A. ("PO") at 6, ECF No. 1-1.[2]) The parties negotiated a purchase order ("PO"), which governed the parties' performance and specified Primoris' labor rates. (Compl. ¶¶ 7, 48; *see generally* PO.) The PO also contained a choice of law and forum selection clause:

> **Governing Law, Jurisdiction and Venue**. All matters of dispute between the parties, whether regarding, arising from or relating to the Agreement, or arising from alleged extra-contractual facts prior to, during, or subsequent to, formation of the Agreement, including, without limitation, fraud, misrepresentation, negligence or any other alleged tort or violation of contract shall be governed, construed, and enforced in accordance with the laws of the State of Ohio for both substantive and procedural matters (without giving effect to conflict of laws principles) regardless of the theory upon which such matter is asserted. . . . Any legal suit, action, or proceeding regarding, arising from or relating to the Agreement, may be (and, if against Purchaser, must exclusively be) instituted in a State or Federal Court in Summit County, Ohio. Contractor waives any objection it may have now or hereafter regarding the jurisdiction or venue of any such suit, action or proceeding and hereby irrevocably submits to the jurisdiction of any such court in any such suit, action or proceeding.

(*See* PO at 20.) Before executing the PO, Rick Westbrook ("Westbrook"), Primoris' Vice President of Operations, emailed Kevin Smyth ("Smyth"), a Supply Chain Specialist for Defendant, to ask whether Primoris would be "required to follow Prevailing Wage laws" and, if so, whether Smyth could provide the "applicable [Prevailing Wage] classification rates and rules for NJ." (Compl. ¶¶ 8, 9.) Before receiving a reply, Westbrook followed up with an email informing Smyth that the

---

[2] For the purpose of considering the instant motions, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Secs. Litig.*, F3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Here, the PO was attached to the Complaint.

PO would be edited to state "[the] labor rates were not calculated using any Prevailing Wage requirements." (*Id.* ¶ 11.) In the same email, Westbrook again requested confirmation "that as a Non-Union contractor [Primoris is] not obligated to follow Prevailing Wage laws within [Defendant's] operating footprint," and added that "[i]f we subsequently discover we are required to implement Prevailing Wages then we must adjust our labor billing rates accordingly." (*Id.*) Smyth replied: "Thank you for your help today. As discussed, we can make any necessary adjustments if needed." (*Id.* ¶ 12.)

The parties then executed the PO, which included a provision stating: "Please note [Primoris] is a Non-Union contractor so our Base labor rates and fringes were not calculated using Prevailing Wage or Union scales within [Defendant's] operating footprint." (*Id.* ¶¶ 13–15.) Primoris performed under the PO through 2018, and the parties agreed to extend it through the end of 2020. (*Id.* ¶¶ 16–17.)

In 2022, the New Jersey Department of Labor ("NJDOL") audited Primoris' payroll records to assess compliance with New Jersey's Prevailing Wage Law regarding employee wages and benefits. (*Id.* ¶ 22.) The NJDOL concluded Primoris had failed to pay Prevailing Wage rates and owed $836,807.66 in unpaid wages, benefits, penalties, and fees. (*Id.* ¶ 24.) Primoris contested these findings but ultimately settled with the NJDOL for $831,807.66. (*Id.* ¶¶ 25, 28.) After paying the entire NJDOL settlement, Primoris demanded that FirstEnergy reimburse Primoris for the full $831,807.66, which Defendant refused. (*Id.* ¶¶ 26–27.)

Primoris filed this action on May 7, 2024, alleging Breach of Contract (Count I), Breach of the Covenant of Good Faith and Fair Dealing (Count II), Promissory Estoppel (Count III), Unjust Enrichment (Count IV), Quantum Meruit (Count V), Fraudulent Misrepresentation (Count VI), and Account Stated (Count VII). (*See* Compl. at 6–14.)

On January 10, 2025, Defendant moved to dismiss the Complaint under Rule 12(b)(6) or, in the alternative, to transfer venue to Ohio in accordance with the PO's forum selection clause (Mot. to Dismiss, ECF No. 17) and filed a memorandum in support thereof. (Def's Moving Br.)  Plaintiff filed a brief in opposition (Pl.'s Opp'n, ECF No. 19), and Defendant replied in further support. (Def.'s Reply, ECF No. 21). This motion is now fully briefed and ripe for the Court to decide.

## II.   __LEGAL STANDARD__[3]

"Because 'questions of venue . . . are essentially procedural, rather than substantive, in nature,' federal law applies in diversity cases." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) (quoting *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1991)). In turn, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In deciding whether to transfer venues, the Court generally considers several factors which fall into two categories: "the private interests of the litigants; and the public interest in the fair and efficient administration of justice." *Matias v. Abbott Lab'ys., Inc.*, No. 24-10328, 2025 WL 2110241, at *3 (D.N.J. July 29, 2025).

However, where the matter arises from a contract with a mandatory and enforceable forum selection clause, the forum selection clause "should be given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 63 (2013). Accordingly, a forum selection clause alters the Court's § 1404(a) analysis in three ways: the Court (1) "give[s] no weight to the forum preferred by 'the party defying the forum-selection clause'"; (2) "deem[s] the private interests to 'weigh entirely in favor of the preselected forum' because the parties agreed

---

[3] Because this Court does not reach the merits of the motion to dismiss, the Rule 12(b)(6) standard is omitted.

to the preselected forum and thereby waived the right to challenge it as inconvenient"; and (3) "proceed[s] to analyze only public interests." *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (quoting *Atl. Marine*, 571 U.S. at 62–65). If, however, the forum selection clause is deemed unenforceable or otherwise inapplicable, the Court gives the clause no effect and applies the traditional § 1404(a) analysis, considering both public and private interest factors. *See Lieberman v. Carnival Cruise Lines*, No. 13-4716, 2014 WL 3906066, at *12 (D.N.J. Aug. 6, 2014).

## III.   DISCUSSION

Defendant contends that, because all seven counts "regard, arise from, or relate to" the PO, the matter should be transferred to the Northern District of Ohio in accordance with the forum selection clause. (Def.'s Moving Br. at 31.) Therefore, to determine the proper § 1404(a) venue transfer analysis, the Court must decide whether the forum selection clause is enforceable and applicable to the matter at hand.

### A.  The Forum Selection Clause is Unambiguous and Enforceable

Plaintiff argues that the forum selection clause is ambiguous regarding whether it is permissive or mandatory, whether it reaches fraud and equitable claims, and whether it can be invoked by Defendant specifically. (Pl.'s Opp'n at 29–31.) Plaintiff also challenges the clause's enforceability on public policy, fairness, and fraud grounds. (*Id.*) The Court will first address Plaintiff's ambiguity arguments involving the interpretation of the forum selection clause and will address enforceability questions thereafter.

#### 1.  The Forum Selection Clause is Unambiguous

##### a.   Applicable Law

In addition to challenging enforceability, a party can nullify a forum selection clause in other ways, such as by showing the legal claims at issue exceed the scope of the clause or that the terms of the clause are ambiguous as applied. *See Grasso Foods, Inc. v. Entex Techs., Inc.*, No. 21-17788, 2022 WL 2046936, at *2 (D.N.J. June 7, 2022); *151 Foods, LLC v. Cummings Atlanta LLC*, No. 19-17093, 2021 WL 4077560, at *3 (D.N.J. Sept. 8, 2021). Such questions of contract interpretation are "quintessentially substantive, rather than procedural." *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 182 (3d Cir. 2017) (internal quotation marks omitted). In diversity cases, "courts should apply state contract law to decide interpretation questions." *Id*. Accordingly, state law governs the scope, applicability, and enforceability of the forum selection clause. *See Meridian Consulting I Corp., Inc. v. Eurotec Can. Ltd.*, No. 19-22197, 2021 WL 689132, at *10 (D.N.J. Feb. 22, 2021) (applying state law to determine whether a forum selection clause is mandatory or permissive); *Collins*, 874 F.3d at 183 (applying state law to decide whether the scope of a forum selection encompassed the plaintiff's claims); *Grasso*, 2022 WL 2046936, at *3 ("Whether [a] forum-selection clause is 'ambiguous' is . . . a question of contract interpretation governed by state law.") (citation omitted).

Having established that state law applies to interpretive questions, the Court must now decide which state's law to apply. In a diversity action, "a district court must apply the choice of law rules of the forum state to determine what law will govern each of the issues of a case." *Gold Lion Steel LLC v. Glob. Merch. Cash, Inc.*, No. 21-10702, 2022 WL 596997, at *3 (D.N.J. Feb. 28, 2022) (quoting *Thabault v. Chait*, 541 F.3d 512, 535 (3d Cir. 2008)). Generally, "when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice." *Collins*, 874 F.3d at 183–84 (quoting *Instructional Sys., Inc. v.*

6

*Comput. Curriculum Corp.*, 130 N.J. 324, 341 (1992)). However, the parties' contractual choice will not govern if:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* at 184 (*Instructional Sys.*, 130 N.J. at 341). Neither of these two exceptions apply. *Id.* First, there is a substantial relationship to Ohio, as it is the location of Defendant's principal place of business. *Instructional Sys.*, 130 N.J. at 342 (finding a corporation's California headquarters established a substantial relationship to California); *see also Restatement (Second) of Conflict of Laws* § 187, cmt. f (stating that a "substantial relationship" is present where one of the parties' principal place of business is the "state of the chosen law."). Regarding the second exception, while the dispute arises from the NJDOL's application of the New Jersey Prevailing Wage Law, Plaintiff fails to explain how or why such laws will be applied or interpreted here, or how this action will jeopardize the assessment produced thereunder, which Primoris already paid in full. (Compl. at ¶ 82.) Applying Ohio law to apportion contractual liability will not offend any "fundamental policy" of New Jersey, and, accordingly, the Court will apply Ohio law to interpret the forum selection clause.

### b. Applying Ohio Law

Plaintiff claims the forum selection clause is permissive rather than mandatory or, if not strictly permissive, contains both permissive and mandatory language and should be construed against Defendant. (Pl.'s Opp'n at 31.) The Court disagrees.

"Mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum. In contrast, permissive forum selection clauses authorize

7

jurisdiction in a designated forum, but do not prohibit litigation elsewhere." *EI UK Holdings, Inc. v. Cinergy UK, Inc.*, 2005-Ohio-1271, at ¶ 20 (Ct. App.) (quoting *K&V Sci. Co. v. BMW*, 314 F.3d 494, 498 (10th Cir. 2002)).

Here, while the forum selection clause states that suits arising from the PO "may be" brought in Summit County, Ohio, that statement is immediately qualified with a parenthetical stating that suits "against Purchaser, must exclusively be" brought in Summit County. (PO at 20.) On its face, the PO clearly distinguishes suits in which FirstEnergy is the defendant (in which Summit County is the mandatory venue) from all other lawsuits arising from the agreement (in which Summit County is a *permissible* venue). The clause's "exclusive" language prohibits suits against "Purchaser" (i.e., FirstEnergy) from any venue other than Summit County, making it the mandatory venue for such actions, including the instant matter. *Keehan Tenn. Inv., LLC v. Praetorium Secured Fund I, L.P.*, 2016-Ohio-8390, 71 N.E.3d 325, at ¶ 15 (Ct. App.) (finding the word "exclusive" designated the specified venue "to the exclusion of all other jurisdictions.")

Plaintiff points to a non-binding case, also involving FirstEnergy, in which the court found the forum selection clause ambiguous. (Pl.'s Opp'n at 32.) In that case, the clause stated "[a]ny legal suit, action, or proceeding *to collect payment due hereunder from Purchaser*, or otherwise arising out of or relating to this Agreement may be (and, if against Purchaser, must exclusively be)" brought in Summit County. *Carolina Pole, Inc. v. FirstEnergy Corp.*, 197 N.C. App. 401, 401 (2009) (emphasis added).

*Carolina Pole* is readily distinguishable because the payment collections carveout there is not in the forum selection clause here. Indeed, the plain text of the PO's forum selection clause is mandatory for *all* suits against the Purchaser, i.e., FirstEnergy. (PO at 20.) Nor will the Court add that carveout into this PO. *Chilli Assocs. Ltd. P'ship v. Denti Rests. Inc.*, 2023-Ohio-1978, 217

8

N.E.3d 137, at ¶ 20 ("Courts may not rewrite clear and unambiguous contract provisions to achieve a more equitable result.").

Plaintiff also attempts to evade the forum selection clause by seizing upon Defendant's contention that another FirstEnergy entity—FirstEnergy Service Company ("FESC")—executed the PO and was thus the "Purchaser" thereunder, making FirstEnergy Corp. an improper defendant in this matter. (*See* Pl.'s Opp'n at 35–36; Defs.' Moving Br. at 9.)

Although Plaintiff argues that "Purchaser" refers to Defendant (Pl.'s Opp'n at 9–11), Plaintiff states that, if Defendant is correct that "Purchaser" refers to FESC, Defendant cannot enforce the forum selection clause, as it only applies to suits "against *Purchaser*." (*Id.* at 35) (emphasis added). This argument is illogical.

On one hand, the PO defines "Purchaser" as "[FESC] on its own behalf and on behalf of its affiliates." (PO at 1.) Yet on the other hand, FESC is also listed as "authorized *agent* for the Purchaser" under the definition of "Agent," and Plaintiff enumerates several references to Defendant, rather than FESC, in "contractual documents and correspondence." (*Id.* at 11; Pl.'s Opp'n at 11.) The Court, however, need not resolve that issue to determine the applicability of the forum selection clause. This is an action by the "Contractor" (Primoris) against the "Purchaser" arising from the PO negotiated by those same parties. By its terms, the forum selection clause applies to and can be invoked by the "Purchaser." Whether "Purchaser" is ultimately found to refer to both or either Defendant and FESC, the clause is nevertheless mandatory in these circumstances.

Finally, Plaintiff argues the scope of the forum selection clause, which applies to any legal suit "regarding, arising from or relating to the [PO]" does not include fraud or the other equitable and tort-based claims pleaded by Plaintiff. (Pl's Opp'n at 31.) This conclusion is not supported by law.

To determine whether claims not explicitly addressed by a forum selection clause, such as equitable and tort claims, are covered by the clause, Ohio courts ask whether the asserted claims are "sufficiently related to the claim that is specifically covered by the clause." *Bohl v. Hauke*, 180 Ohio App. 3d 526, 2009-Ohio-150, 906 N.E.2d 450, at ¶ 26. Courts typically find that equitable and tort-based claims, including fraud, are covered by a forum selection clause where the underlying conduct arose from a party's performance under the contract, or gave rise to the contract itself. *See, e.g.*, *CLE Transp. Co. v. Fetch Logistics, Inc.*, 2018 Ohio Misc. LEXIS 3338, at *5 (Ct. Com. Pl. Sep. 18, 2018) (concluding that defamation, tortious interference, and equitable claims that arose from an alleged breach of contract were "sufficiently related to" the contract claims and covered by the forum selection clause); *see also Campbell v. Davidson Kempner Cap. Mgmt. L.P.*, 2019 Ohio Misc. LEXIS 7182, at *20 (Ct. Com. Pl. July 31, 2019) (finding that alleged fraudulent misrepresentations that "led to the execution of the Agreements" fell within the scope of a forum selection clause covering claims "that arise out of, relate to or [are in] any manner connected with" the Agreements). Each of Plaintiff's claims derive from either the PO or the preceding negotiations that produced it. The contract-based claims arise from FirstEnergy's non-payment of wages allegedly owed under the PO, while the remaining claims seek equitable compensation for Plaintiff's performance under the PO or enforcement of the promises that allegedly induced Plaintiff to sign the PO. (*See* Compl. at 6-14.) In each case, the claims fall well within the ambit of the forum selection clause, which requires all PO-related claims against FirstEnergy to be brought in Ohio.

### 2. The Forum Selection Clause is Enforceable under Federal Law

Plaintiff asserts that, even if the forum selection clause covers Plaintiff's claims, it is unenforceable considering: (1) the fact that "FirstEnergy fraudulently induced Primoris into" the

PO, (2) New Jersey's "public policy concerns," and (3) the "interests of justice." (Pl.'s Opp'n at 26, 30.)

"Federal law controls the question of whether to enforce a forum selection clause." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) (citation omitted). Under federal law, a forum selection clause will only be deemed unenforceable if the Court finds that "compelling compliance with the clause is 'unreasonable' under the circumstances." *Collins*, 874 F.3d at 181 (quoting *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991)). The party disputing the enforceability of a forum selection clause must establish: "(1) that [the clause] is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable." *Moneygram Payment Sys., Inc. v. Consorcio Oriental*, *S.A.*, 65 F. App'x 844, 846 (3d Cir 2003) (citation omitted).

Regarding fraud, Plaintiff states that FirstEnergy made the "false promise" to adjust labor rates "if it were later found that Primoris was 'obligated to follow Prevailing Wage laws'" and that FirstEnergy harbored "secret" knowledge that Prevailing Wage rates *did* apply, yet failed to notify Primoris of this fact. (Pl.'s Opp'n at 37.) Plaintiff also contends that "Primoris only agreed to sign the PO based upon [these] fraudulent omissions/misrepresentations" and the entire PO was therefore procured by fraud, invalidating the forum selection clause contained within. (*Id.*)

To successfully invalidate a forum selection clause based on fraud, the challenging party must demonstrate "that the forum selection clause itself was procured through fraud." *Ross Univ. Sch. of Med. v. Amini*, No. 13-6121, 2014 WL 29032, at *4 (D.N.J. Jan. 2, 2014) (citing *MoneyGram*, 65 F. App'x at 847); *Travelodge Hotels, Inc. v. Mangat Houston Race Track, LLC*, No. 06-3543, 2007 WL 2156367, at *4 (D.N.J. July 25, 2007). Merely alleging fraud "with respect

11

to a contract, as a whole, will not suspend the operation of a forum selection clause." *Travelodge*, 2007 WL 2156367, at *5 (collecting cases). Here, Plaintiff alleges that FirstEnergy's fraudulent misrepresentations and omissions induced Plaintiff's assent to the PO *as a whole* and does not allege any fraud with respect to the forum selection clause specifically. (*See, e.g.*, Pl.'s Opp'n at 37.)

Plaintiff also alleges that public policy necessitates deciding this "localized controversy" in New Jersey, given that the underlying project involved storm restoration work in this state, and that the dispute "was born out of an investigation by the [NJDOL]" and "stems from the applicability of New Jersey prevailing wage law." (*Id*. at 38.) In support of this contention, Plaintiff cites to the New Jersey State Legislature, which states that it is "the public policy of this State to establish a prevailing wage level for workmen . . . to protect them as well as their employers." (*Id.* at 38–39) (quoting N.J.S.A. 34:11-56.25.) The Court finds these arguments unpersuasive.

Primoris' work under the PO was completed several years ago, and this matter relates to compensation rather than the nature or substance of the work itself. Further, while the NJDOL conducted the audit and applied New Jersey Prevailing Wage law, Primoris has paid the assessment in full, so this action in no manner threatens the objectives of the Prevailing Wage law. *See Hagen Constr., Inc. v. Whiting-Turner Contracting Co.*, No. 17-6969, 2018 WL 1918470, at *4 (D.N.J. Apr. 24, 2018) (finding "no strong public policy" weighed against venue transfer of a contractual dispute stemming from a New Jersey construction project). As a simple contractual dispute between Texas and Ohio companies, there are no New Jersey public policy concerns that override enforcement of the forum selection clause.

Finally, Plaintiff contends that it would be "unreasonable and unjust" to enforce the forum selection clause because the terms of the PO were "non-negotiable," and Primoris was "tricked"

12

into executing the agreement under rushed circumstances. (Pl.'s Opp'n at 40.) Plaintiff contends these circumstances resulted in a clause that "unfairly" gives FirstEnergy the "unfettered right to bring an action anywhere." (*Id.*)

However, Plaintiff overlooks the fact that an agreement's non-negotiable terms "[do] not render a forum clause unenforceable, and courts routinely uphold such clauses 'even in situations involving adhesion contracts, unequal bargaining power, and the absence of negotiations over the clause.'" *Hobbi v. 2U, Inc.*, No. 25-2263, 2025 WL 2308526, at *2 (D.N.J. Aug. 11, 2025) (quoting *Heartland Payment Sys. Inc. v. Steves*, 2015 WL 7737344, at *3 (D.N.J. Dec. 1, 2015)). Further, although Plaintiff laments the fact that the clause places greater restrictions on Primoris than on FirstEnergy, Plaintiff can point to no reason why New Jersey is a more convenient forum than Ohio, nor how enforcement of the clause will deprive Primoris of its day in court. *Id.* (requiring that the plaintiff demonstrate that litigating in the different forum "would, for all practical purposes, deprive [plaintiff] of his day in court.") Especially given that FirstEnergy and Primoris are sophisticated corporate entities, neither the circumstances of the agreement's execution nor the terms of the clause itself are sufficiently unreasonable to outweigh the "strong presumption" in favor of enforcing forum selection clauses. *Lokai Holdings, LLC v. Luxe Boutique, LLC*, No. 18-16965, 2019 WL 13398950, at *2 (D.N.J. Nov. 12, 2019) ("There is a strong presumption in favor of enforcing forum-selection clauses, particularly in arms-length agreements between sophisticated corporate parties.") (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–15, (1972)). Because the forum selection clause is applicable and enforceable, the Court will apply the modified § 1404(a) analysis to determine venue transfer, considering only relevant public interest factors.

**B.  Venue Transfer is Appropriate Under 28 U.S.C. § 1404(a)**

To determine the suitability of venue transfer under the modified analysis, the Court will analyze:

> [1] enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] relative administrative difficulties in the two fora resulting from court congestion; [4] local interests in deciding local controversies at home; [5] public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879–80. The party "acting in violation of the forum-selection clause . . . bear[s] the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67. The first and third factors are neutral in this case and are not addressed by either party; therefore, the Court will address only the remaining four.

The second factor (practical considerations) weighs in favor of venue transfer, as neither party is located in New Jersey, and the PO, at the crux of the dispute, was negotiated by companies based in Texas and Ohio, respectively. (*See* Compl. at 1–3.) Plaintiff points to no specific witnesses or facts originating in New Jersey that would make this state a more efficient forum in which to resolve this matter. Regarding the fourth factor (local interests), New Jersey's interest in this matter is minimal if not entirely absent. While Primoris' work under the PO was performed in New Jersey, this action centers around a contract governed by Ohio law, between entities based in Texas and Ohio. (*Id.*) With respect to the fifth factor (public policies of the forum state), no public policy concerns are present as the NJDOL assessment and application of New Jersey Prevailing Wage law are merely peripheral and do not affect the primary issue of FirstEnergy's liability under the Ohio-governed PO. Finally, because Ohio law will govern the PO, the sixth factor (the Court's familiarity with applying applicable state law) also weighs in favor of litigating this matter in that state.

In conclusion, the weak nexus to New Jersey is insufficient to outweigh the presumptive enforceability of a valid forum selection clause, which should be "given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 24 (1988)). Accordingly, Defendant's motion to transfer venue will be granted.

### C. Motion to Dismiss Pursuant to Rule 12(b)(6)

Because the Court grants Defendant's motion to transfer venue under Section 1404(a), the Court denies Defendant's motion to dismiss under Rule 12(b)(6) as moot. Based on the transfer, the Court will defer Defendant's motion to dismiss under Rule 12(b)(6) to the transferee court. *See Gulden v. Exxon Mobil Corp.*, No. 24-7381, 2025 WL 1549313, at *12 (D.N.J. May 30, 2025) (deferring motion to dismiss to transferee court).

## IV.   CONCLUSION

For the foregoing reasons, the Defendant's motion to transfer venue to the U.S. District Court for the Northern District of Ohio, Eastern Division (ECF No. 17) is **GRANTED**, and Defendant's motion to dismiss pursuant to 12(b)(6) is **DENIED as moot**. An appropriate Order accompanies this Opinion.

**DATED:** February 23, 2026

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge

15